## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**MILITARY ROAD REVITALIZATION**                    CIVIL ACTION
**COMPANY, LLC ET AL.**

**VERSUS**                                                          **No. 24-55**

**ST. TAMMANY PARISH GOVERNMENT**                    SECTION I

## ORDER & REASONS

Two motions are pending before the Court. First is a motion[1] filed by defendant St. Tammany Parish Government ("St. Tammany") to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to stay this matter. Second is a motion[2] to dismiss all claims against defendant Safety National Casualty Corporation ("Safety National") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs, Military Road Revitalization Company, LLC ("Military Road") and BCP Northshore Properties, LLC ("BCP") (collectively, "plaintiffs"), oppose St. Tammany's motion to dismiss.[3] Military Road also opposes Safety National's motion to dismiss.[4] St. Tammany and Safety National both filed replies.[5]

For the reasons that follow, the Court grants in part and denies in part St. Tammany's motion to dismiss and denies Safety National's motion to dismiss. The Court also grants Military Road leave to amend its complaint.

---

[1] R. Doc. No. 21.
[2] R. Doc. No. 22.
[3] R. Doc. No. 25.
[4] R. Doc. No. 26.
[5] R. Doc. Nos. 27, 28.

1

# I.    BACKGROUND

Plaintiffs filed the instant lawsuit on January 5, 2024.[6] On February 23, 2024, plaintiffs filed their first amended complaint.[7] Plaintiffs allege that "St. Tammany Parish has a significant need for affordable housing" partially caused by "being predominately zoned for single-family housing[.]"[8]

According to plaintiffs, despite recognizing the need for affordable housing and despite St. Tammany's demographics, St. Tammany "acted to prevent the construction of an affordable, multifamily housing development[.]"[9] Specifically, Military Road—a developer—planned to develop a project known as the "Covington Trace Ridge Apartments" on a 5.328 acre lot located at 72147 Military Road in Covington, Louisiana.[10] The property is listed as HC-2 Highway Commercial on the official St. Tammany zoning map.[11] A "permitted use" of property located in the HC-2 Highway Commercial District includes "[l]odging, 100 rooms or less (including apartments, hotels, motels)."[12] Plaintiffs assert that permitted uses are considered "by right" and do not require approval from St. Tammany's Zoning Commission, Planning Commission, or Parish Council.[13]

---

[6] R. Doc. No. 1.

[7] R. Doc. No. 10.

[8] *Id.* ¶¶ 12, 14.

[9] *Id.* ¶ 34.

[10] *Id.* ¶ 35.

[11] *Id.* ¶ 36.

[12] *Id.* ¶¶ 39–40 (quoting St. Tammany Parish Unified Development Code, art. V § 130-917).

[13] *Id.* ¶ 41 (citing St. Tammany Parish Unified Development Code, art. IV § 130-918(a); *id.* art. VII § 130-2213).

The amended complaint further alleges that Military Road (the developer) and BCP (the former owner of the land and improvements located at the property) executed a purchase and sale agreements in which BCP agreed to sell and Military Road agreed to purchase all of BCP's right, title, and interest in and to the property.[14] Plaintiffs allege that Military Road has been "working with BCP, engaging with government officials, cooperating with utility providers, and seeking to ensure environmental compliance for the [p]roject" since "early 2022[.]"[15]

Plaintiffs further allege that the project would be a 100-unit, mixed-income community because 51% of the units target households with income levels of 80% or less of the area median income and households with at least one member with a disability.[16] Additionally, plaintiffs allege that, "[b]ased on the HC-2 Highway Commercial zoning and guidance from the St. Tammany Planning and Permits Department, [Military Road] has incurred approximately $2 million [in] land acquisition costs, legal fees, development fees, consulting and professional service fees, government agencies permits and fees, engineering and design fees, and management fees[.]"[17]

The amended complaint asserts that, on May 4, 2023, the St. Tammany Parish Council (the "Parish Council") introduced "an ordinance imposing a moratorium on rezoning and/or permitting for the construction of multifamily buildings" in certain

---

[14] *Id.* ¶ 42.
[15] *Id.* ¶ 43.
[16] *Id.* ¶ 44.
[17] *Id.* ¶ 51.

parts of the parish.[18] This May 4, 2023 ordinance did not apply to property zoned as "HC."[19]

On May 9, 2023, Military Road presented the project to several government officials.[20] During this meeting, Councilman David R. Fitzgerald allegedly "expressed outrage" and "stated that his constituents would 'hate' the [p]roject and be very upset with him if it got built."[21]

Plaintiffs further assert that, at the Parish Council's May 18, 2023 meeting, the Parish Council introduced an amended version of the moratorium ordinance, which amended the May 4, 2023 version to apply to "Highway Commercial Zoning Classifications with Lodging (including apartments, hotels, and motels)[.]"[22] Plaintiffs allege that the moratorium ordinance "was clearly targeted and retaliatory, specifically aimed to stop the [p]roject, and in particular, to keep out workforce or low-to-moderate income residents, who are mostly African American[s] and Hispanics, in the affluent neighborhood adjacent to the [p]roperty."[23] The Parish Council also allegedly "prepared a resolution to 'investigate' the Parish President for allowing the [p]roject[.]"[24]

---

[18] *Id.* ¶ 55.
[19] *Id.* ¶ 56.
[20] *Id.* ¶ 57.
[21] *Id.* ¶¶ 58–59.
[22] *Id.* ¶ 64.
[23] *Id.* ¶ 66.
[24] *Id.* ¶ 61.

At its June 1, 2023 meeting, the Parish Council adopted the moratorium ordinance and the investigation resolution.[25] The purpose of the moratorium ordinance was purportedly to address concerns that population growth has outpaced improvements to traffic and drainage infrastructure, though plaintiffs allege that this reasoning was "pretextual" in light of the Louisiana Office of Community Development's determination that the project would have no significant impact on the human or natural environment.[26]

On June 30, 2023, Military Road filed a lawsuit against St. Tammany in the 22nd Judicial District Court for St. Tammany Parish.[27] In that lawsuit, Military Road sought a judgment declaring the moratorium ordinance null and void under state law and/or a judgment declaring that the project was exempt from the moratorium ordinance.[28] The state district court denied Military Road's request for a preliminary injunction.[29] At the time plaintiffs' amended complaint was filed, that determination was "the subject of a supervisory writ application with the Louisiana First Circuit Court of Appeal."[30] However, plaintiffs have now advised the Court that the Louisiana First Circuit Court of Appeal granted Military Road's writ application, reversed the state district judge's finding that Military Road did not have a right of action, and found that Military Road had a right to appeal the trial court judgment.[31]

---

[25] Id. ¶¶ 79–80.
[26] *Id.* ¶¶ 81, 68.
[27] *Id.* ¶ 88.
[28] *Id.*
[29] *Id.* ¶ 90.
[30] *Id.*
[31] R. Doc. No. 25, at 9.

On December 7, 2023, the Parish Council extended the moratorium ordinance.[32] It also considered an ordinance to rename and reorganize the Unified Development Code, including by removing the word "apartments" as a permitted use in certain zoned property, including property zoned HC-2.[33] The Parish Council also "amended and re-introduced an amendment that exempted the [p]roperty from the changes to the Unified Development Code."[34] On December 18, 2023, the Parish Council considered and rejected a resolution that would have authorized the Parish President to negotiate and execute a consent judgment and settlement and release agreement with respect to this dispute, vacated the moratorium ordinance to exclude the project, and authorized the Parish President to "apply [federal Community Development Block Grant] funds for the development of the [p]roject."[35]

Plaintiffs allege that St. Tammany's "tacit endorsement" of the discriminatory sentiments espoused by the project's opponents "has the intent and effect of retaliating against [p]laintiffs for proposing an affordable housing complex in Covington and [of] chilling [p]laintiffs and others from proposing similar developments in the future."[36] Plaintiffs assert that, because of the moratorium ordinance, they could not seek or obtain necessary permits or start work on the

---

[32] R. Doc. No. 10, ¶ 92.

[33] *Id.* ¶ 93.

[34] *Id.* ¶ 94.

[35] *Id.* ¶¶ 96–97.

[36] *Id.* ¶ 112.

project.[37] Plaintiffs further assert that delaying the project risked stopping it altogether through increased interest rates, increased costs, or lost funding.[38] Accordingly, plaintiffs allege that they have suffered and will suffer injuries, including economic losses and "the deprivation of the right to develop affordable housing for individuals free from discrimination on the basis of race or disability."[39]

Plaintiffs allege that St. Tammany's actions in blocking the development of the project have a disparate impact on protected classes, including by limiting housing opportunities for African Americans, Hispanics, and persons with disabilities who would live in the proposed apartments.[40] Specifically, plaintiffs allege that the parish's actions have the purpose and effect of perpetuating racial segregation and that the parish's actions constitute unlawful interference with housing opportunities on the basis of race or disability.[41] Additionally, plaintiffs allege that, based on a liability policy issued by Safety National to St. Tammany, Safety National insures the "wrongful act" alleged in plaintiffs' amended complaint.[42]

Plaintiffs' amended complaint asserts six claims. First, plaintiffs allege that St. Tammany's moratorium ordinance and "repeated refusal to fully permit the development and construction of the project" violated the Fair Housing Act (the

---

[37] *Id.* ¶ 113. As the Court will explain more fully below, on April 24, 2024, St. Tammany passed a resolution vacating in part the moratorium ordinance with respect to the property.
[38] *Id.* ¶ 114.
[39] *Id.* ¶ 119.
[40] *Id.* ¶¶ 111, 115.
[41] *Id.* ¶¶ 116–17.
[42] *Id.* ¶¶ 119a–19y.

"FHA") and its implementing regulations.[43] Second, plaintiffs allege that St. Tammany violated plaintiffs' rights under the Louisiana Equal Housing Opportunity Act.[44] Third, plaintiffs allege that St. Tammany violated the Americans With Disabilities Act (the "ADA") and the Rehabilitation Act.[45] Fourth, plaintiffs allege that St. Tammany violated plaintiffs' rights under Title VI of the Civil Rights Act of 1964.[46] Fifth, plaintiffs allege that St. Tammany deprived plaintiffs of due process property and liberty interests pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution and the Louisiana Constitution.[47] Sixth, plaintiffs assert a claim against Safety National under Louisiana's Direct Action Statute.[48]

Accordingly, plaintiffs request declaratory judgments that St. Tammany's actions violated the FHA, the ADA, the Rehabilitation Act, the Louisiana Equal Housing Opportunity Act, and Title VI of the Civil Rights Act.[49] Plaintiffs further request a declaratory judgment that the moratorium ordinance was adopted in

---

[43] *Id.* ¶¶ 120–63. Specifically, Count 1 asserts that the Parish violated 42 U.S.C. § 3604 (which makes it unlawful to "make unavailable or deny[] a dwelling to any person because of race, color, religion, sex, familial status, or national origin") and 42 U.S.C. § 3617 (which makes it unlawful to interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of[] any right granted or protected by [various sections] of this title").

[44] *Id.* ¶¶ 164–71. The Louisiana Equal Opportunity Act makes it unlawful to "make unavailable or deny[] a dwelling to any person because of race, color, religion, sex, familial status, national origin, or natural, protective, or cultural hairstyle." La. Rev. Stat. 51:2606A(1).

[45] *Id.* ¶¶ 172–80.

[46] *Id.* ¶¶ 181–87.

[47] *Id.* ¶¶ 188–206.

[48] *Id.* ¶¶ 207–12.

[49] *Id.* at 59–60.

8

violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.[50] Additionally, plaintiffs request a judgment declaring defendants "be held jointly, severally, and/or solidarily liable with each other for all damages, fees, and costs suffered by [p]laintiffs[.]"[51] Finally, plaintiffs request compensatory and/or punitive damages.[52]

On April 9 and April 10, 2024, defendants filed the present motions to dismiss. According to plaintiffs' opposition, on April 24, 2024, St. Tammany passed a resolution that vacated, in part, the moratorium ordinance with respect to the property.[53] However, plaintiffs contend that St. Tammany's belated removal of the moratorium ordinance (after the Parish learned that there would be a closing sale of the property to a third-party buyer such that it could anticipate that Military Road would not construct its project at the property) "does not unwind the clocks and erase the damages that [Military Road] already suffered as a result of the Parish's unlawful acts in 2023."[54]

## II.   LAW & ANALYSIS

### a.  St. Tammany's Motion to Dismiss or Stay

The Court first considers St. Tammany's motion to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at 59–61.

[53] R. Doc. No. 25, at 9–10.

[54] *Id.* at 10.

stay this matter.[55] First, St. Tammany argues that the Court should dismiss BCP's claims because the complaint does not state a valid claim on behalf of BCP.[56] Second, St. Tammany argues that the Court should dismiss all claims in this matter pursuant to Rule 12(b)(1) because they are not ripe.[57] Third, St. Tammany argues that, if the Court does not dismiss the claims, it should stay "the remainder of these proceedings" pending resolution of the state court lawsuit.[58]

In response, plaintiffs assert that BCP's alleged injury is moot as of April 30, 2024, the date BCP sold the property.[59] However, plaintiffs argue that Military Road's claims against St. Tammany are ripe.[60] They also contend that the Court should not stay the case, but rather exercise its jurisdiction over the claims in this matter because the state court litigation will not dispose of the federal claims at issue in this case.[61] Alternatively, Military Road requests leave to amend its complaint.[62]

In reply, St. Tammany emphasizes that plaintiffs concede "BCP has no claim[.]"[63] St. Tammany also asserts that the opposition does not carry Military Road's burden of establishing ripeness based on the unfinished permitting process.[64]

---

[55] R. Doc. No. 21.
[56] R. Doc. No. 21-1, at 13–15. Throughout this order, the Court refers to the pagination stamped by the Clerk's Office at the top of this filing, not the different pagination at the bottom of this filing.
[57] *Id.* at 16–22.
[58] *Id.* at 22–33.
[59] R. Doc. No. 25, at 24.
[60] *Id.* at 11–17.
[61] *Id.* at 17–24.
[62] *Id.* at 25.
[63] R. Doc. No. 27, at 1–2.
[64] *Id.* at 2–7.

Finally, St. Tammany argues that the opposition does not undermine the parallelism between the instant matter and the state court case and criticizes Military Road's analysis of the factors relevant to the abstention analysis.[65]

### i.   Rule 12(b)(1) Standard of Law

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quotation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. If a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed

---

[65] *Id.* at 7–10.

without prejudice. *See, e.g.*, *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

ii.     *Subject Matter Jurisdiction Over BCP's Claims*

The Court first decides whether it has subject matter jurisdiction over BCP's claims against defendants. As the U.S. Court of Appeals for the Fifth Circuit has explained, "[m]ootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524–25 (5th Cir. 2008) (cleaned up). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues it presents." *Id.* at 525.

In response to St. Tammany's motion to dismiss, plaintiffs assert that—although in their view BCP had standing when this lawsuit was filed—BCP's alleged injury is now moot because BCP sold the property on April 30, 2024.[66] Accordingly, the Court will dismiss BCP's claims against defendants as moot pursuant to Rule 12(b)(1).

iii.     *Subject Matter Jurisdiction Over Military Road's Claims*

The Court next decides whether it has subject matter jurisdiction over Military Road's claims against defendants. "Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies." *Choice, Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012). "The justiciability doctrines of standing, mootness, political question, and ripeness all

---

[66] R. Doc. No. 25, at 24.

originate in Article III's 'case' or 'controversy' language." *Id.* at 715 (cleaned up). "The ripeness doctrine is also drawn from prudential reasons for refusing to exercise jurisdiction." *Id.* (cleaned up). "The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (cleaned up).

"A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Id.* (cleaned up). "The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (cleaned up). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* (cleaned up). "However, even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Id.* (cleaned up).

St. Tammany argues that the Court should dismiss the complaint as unripe since Military Road "voluntarily abandoned" the process of applying for certain necessary permits.[67] Specifically, St. Tammany argues that Military Road "has failed and refused to address [ ] approximately 100 deficiencies in the permit applications, which must be resolved prior to the issuance of the requested permits."[68] Accordingly, St. Tammany argues that Military Road's claims are merely speculative as they depend entirely on contingent future events—namely, the finalization of the

---

[67] R. Doc. No. 21-1, at 16–17.
[68] *Id.* at 17.

government process for determining whether the project may go forward.[69]

The Court recognizes that Military Road's permit applications are incomplete and that there are ninety-nine outstanding "comments" or "deficiencies" which Military Road has not addressed.[70] Many of these deficiencies are significant. For example, there is an unaddressed comment related to the property's "limits of fill" because the property is located in a "Critical Drainage Area" and subject to a "No Net Fill" requirement.[71] Additionally, there are unaddressed comments relating to Military Road's failure to obtain permits from the Louisiana Department of Transportation and Development for work under a state highway and Military Road's failure to provide structural calculations stamped by a licensed professional engineer regarding the safety of a proposed aluminum guardrail.[72]

Notably, however, one of the "deficiencies" or "comments" cited by St. Tammany's engineers in the markup summary for the project was the existence of the very same moratorium Military Road challenges in the instant lawsuit.[73] "Especially where it is clear that an application would be denied, ripeness doctrine does not require litigants to 'press on meaninglessly' by going through a futile application process." *Brookline Opportunities, LLC v. Town of Brookline*, 682 F. Supp.

---

[69] *Id.*

[70] R. Doc. No. 21-9 (declaration of Theodore Reynolds, Assistant Director of the Engineering Department for St. Tammany Parish), at 3.

[71] *Id.* at 3.

[72] *Id.* at 4.

[73] R. Doc. No. 21-10, at 115 ("Property currently under a moratorium per Council Od. 23-5152 on the issuance of permits for new construction or placement of any new residential building structures in a multi-family residential district (A-6 through A-8), or Highway Commercial Zoning Classifications.").

3d 168, 181–82 (D.N.H. 2023) (quoting *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990) and citing *Sharpivisons, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 522 (W.D. Pa. 2007)); *see also BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 601 (2d Cir. 2024) (recognizing futility exception to rule that an FHA claim alleging discriminatory enforcement of zoning regulations is not ripe until the government entity charged with implementing the regulations has reached a final decision); *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 691 (M.D. La. 2013) (W.D. La. Aug. 3, 2016) (explaining that, if a request for an accommodation would be futile or foredoomed, then the plaintiff is not required to make such a request before asserting a reasonable accommodation claim). Accordingly, the Court finds that the instant lawsuit is ripe despite Military Road's failure to complete the permit process.

St. Tammany cites several Fifth Circuit cases holding that a *takings* claim is not ripe until the relevant governmental unit has reached a final decision as to what will be done with the property.[74] These cases are distinguishable. Indeed, the Fifth Circuit has explicitly stated that, because a violation under the FHA occurs when a person is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings, "ripeness in the Fair Housing Act context must be distinguished from ripeness cases involving unconstitutional takings or other zoning issues." *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192,

---

[74] *Id.* at 17–18 (citing *Sandy Creek Investors, Ltd. v. City of Jonestown, Tex.*, 325 F.3d 623, 626, 626 (5th Cir. 2003) and *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006)).

199 n.6 (5th Cir. 2000) (citing *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997)); *see also Bryant Woods*, 124 F.3d. at 602 ("Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decisional procedures are invoked without achieving a just compensation.").[75]

St. Tammany also relies on *Urban Developers* for the proposition that, even outside the takings context, a claim is unripe when "it is mere speculation and conjecture whether the project the plaintiff seeks to complete can happen."[76] *Urban Developers* involved federal procedural due process claims under 42 U.S.C. § 1983 as well takings claims. *Urban Developers*, 48 F.3d at 287. In analyzing the ripeness of the plaintiff's procedural due process claims, the *Urban Developers* court relied on "general ripeness principles"—namely, "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"—as opposed to the specific ripeness principles that apply in the takings context. *Id.* at 295. Pursuant to those principles, the court found the procedural due process claims to be unripe because they rested upon a "contingent future event": the deprivation of property without due process of law. *Id.* at 295–96. Since the city had not yet made a final determination about whether it would issue a building permit or condemn the property, the court could not properly evaluate its procedural due process claim based on the deprivation of property.

---

[75] The Court notes that the *Urban Developers* court conducted two different ripeness analyses: one for the takings claims, and another for the remaining constitutional claims. *See Urban Developers*, 468 F.3d at 292–96.
[76] R. Doc. No. 21-1, at 18.

*Urban Developers* is instructive with respect to Military Road's procedural due process claims. Specifically, Military Road alleges that St. Tammany deprived it of its "property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Louisiana Constitution."[77] The Fifth Circuit has explained that, where a permitting process has not yet run its course, due process claims are "'abstract and hypothetical' and thus unripe for judicial review." *Monk v. Huston*, 340 F.3d 279, 282–83 (5th Cir. 2003) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). Accordingly, the Court will dismiss St. Tammany's procedural due process claims as unripe.

Next, St. Tammany cites *Discovery Real Est. & Dev., L.L.C. v. Town of St. Francisville*, No. 22-605, 2022 WL 5265142 (M.D. La. Oct. 6, 2022). In that case, the court dismissed a developer's FHA claim against a town for lack of standing and lack of ripeness. *Discovery*, 2022 WL 5265142, at *1, 14–15. The developer alleged FHA violations based on changes to a comprehensive zoning ordinance ("CZO") which post-dated a moratorium on new developments of any "major subdivision" and new multi-unit residential structures. *Id.* at *1, 4–6. The preexisting moratorium was based on problems the town faced with its sewer system. *Id.* at *4–6.

The *Discovery* court concluded that the developer lacked standing because any injury was caused by the preexisting moratorium rather than the changes to the CZO and any injury would not be redressed by a court order preventing enforcement of the

---

[77] R. Doc. No. 10, ¶ 190.

17

changes to the CZO. *Id.* at *14. The Court also concluded that, even if the plaintiff had standing, its FHA claim was unripe because the case would benefit from further factual development, including whether the moratorium would be extended, whether the town's sewage plant would be completed on time, and whether that would remedy the town's sewage and flooding issues. *Id.* However, as plaintiffs point out, *Discovery* is distinguishable because it involved a challenge to changes to a CZO which could not redress the developer's injury because of the existence of a separate moratorium. In this case, by contrast, there was no separate barrier to the development beyond the moratorium ordinance.

Finally, although no party suggests Military Road's claims for declaratory judgments are moot, the Court must consider whether such claims are moot in light of the vacatur of the moratorium. *See Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987) ("In the absence of its being raised by a party, this court is obliged to raise the subject of mootness *sua sponte*."). "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 242 (1937)); *see also Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

Importantly, in addition to declaratory relief, Military Road seeks compensatory and/or punitive damages based on St. Tammany's alleged conduct in enacting the moratorium ordinance. Military Road alleges that the ordinance caused it to incur $2 million in economic losses and caused it to suffer the deprivation of the

right to develop affordable housing free from discrimination.[78] The vacatur of the moratorium ordinance does not annul these alleged past damages, so they constitute present harm. The Court therefore finds that Military Road's claims are not moot.

Accordingly, the Court will dismiss BCP's claims against both defendants without prejudice as moot and dismiss Military Road's procedural due process claims without prejudice as unripe. The Court will deny St. Tammany's motion to dismiss for lack of subject matter jurisdiction in all other respects.

*iv. Request for a Stay*

St. Tammany next argues that the Court should stay the remainder of these proceedings pending resolution of the state court litigation pursuant to *Colorado River Water Conservation District v. United States*. 424 U.S. 800 (1976).[79] "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction[.]" *Id.* at 817 (cleaned up).

However, pursuant to the *Colorado River* abstention doctrine, a federal court may abstain from exercising its jurisdiction "based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (cleaned up). "*Colorado River* abstention is a narrow exception to a federal court's virtually unflagging duty to adjudicate a controversy

---

[78] R. Doc. No. 10, ¶¶ 52, 119.
[79] R. Doc. No. 21-1, at 22–33.

that is properly before it. Under this doctrine, a federal court may abstain only under exceptional circumstances." *Id.*

In deciding whether to abstain pursuant to *Colorado River*, a federal court must first determine whether the state and federal lawsuits are "sufficiently parallel to make consideration of abstention proper." *Afr. Methodist Episcopal Church*, 756 F.3d at 797. If the lawsuits are sufficiently parallel, a federal court must balance six factors to determine whether exceptional circumstances warrant abstention:

> 1) assumption by either court of jurisdiction over a res, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id.* (quoting *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)).

The Court first considers whether the state and federal proceedings qualify as parallel actions. Parallel actions involve "the same parties and the same issues[.]" *Id.* at 797 (cleaned up). The Fifth Circuit has explained that "there need not be applied in every instance a mincing insistence on the precise identity of parties and issues." *Id.* (cleaned up). This lawsuit and the state court lawsuit involve substantially the same parties for purposes of the *Colorado River* inquiry. In the state lawsuit, Military Road brought claims against St. Tammany.[80] In the federal lawsuit, Military Road and BCP brought claims against St. Tammany and its insurer, Safety National.[81]

---

[80] *See generally* R. Doc. No. 21-8 (state court petition).
[81] *See generally* R. Doc. No. 10.

However, BCP's claims have now been dismissed as moot, leaving Military Road as the only plaintiff. Further, as St. Tammany points out, Military Road has no independent cause of action against Safety National since Safety National's liability is derivative of the alleged liability of its insured.

Mindful of its "virtually unflagging" duty to adjudicate a controversy that is properly before it, however, the Court finds that the two lawsuits do not involve "the same issues" for purposes of the *Colorado River* parallelism analysis. It is true that the claims in both cases arise from the same set of facts: "the enactment of the [m]oratorium [o]rdinance and that [o]rdinance's effect on [Military Road's] construction of the [p]roject."[82]

Importantly, though, if Military Road prevailed in the state court case, that judgment would not resolve the question of whether St. Tammany violated the Fair Housing Act or the other federal statutes cited in Military Road's federal complaint. Broadly, in the state court action, Military Road seeks: (1) a writ of mandamus ordering St. Tammany to issue permits and ordering all comments to remove any reference that the property is under the moratorium ordinance; (2) an injunction enjoining St. Tammany from enforcing the moratorium ordinance; (3) declaratory judgments that the moratorium ordinance is null and void and unconstitutional or that the project is exempt from the moratorium; and (4) a judgment awarding damages based on an unconstitutional taking.[83] Even if Military Road obtained this

---

[82] R. Doc. No. 21-1, at 24.
[83] *See generally* R. Doc. No. 21-8.

relief, it would not resolve the questions at issue in this federal lawsuit—namely, whether St. Tammany violated various federal statutes not at issue in the state litigation and whether Military Road is entitled to damages based on those violations.

Accordingly, the Court finds that the two actions are not sufficiently parallel to warrant *Colorado River* abstention. *See, e.g.*, *Liverpool FC Am. Mktg. Grp., Inc. v. Red Slopes Soccer Found.*, No. 17-CV-00756, 2018 WL 2298388, at *5 (E.D. Tex. May 21, 2018) (finding no parallelism where a state court judgment would not resolve the question raised by the federal lawsuit); *Alpert v. Riley*, No. 04-3774, 2011 WL 801978, at *12 (S.D. Tex. Feb. 10, 2011) (finding no parallelism where "[t]he state court litigation did not and will not dispose of the issues raised in [the] federal case"); *cf. Afr. Methodist Episcopal Church*, 756 F.3d at 798 (finding parallelism where the state court proceeding would necessarily dispose of all claims asserted by the plaintiff in the federal action). The Court will therefore deny St. Tammany's alternative request to stay this lawsuit pursuant to *Colorado River*.[84]

### b. Safety National's Motion to Dismiss

The Court next considers Safety National's motion to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[85] Safety

---

[84] Because the Court concludes that the state court lawsuit and the federal court lawsuit are not parallel, it need not address the six *Colorado River* factors. *See Afr. Methodist Episcopal Church*, 756 F.3d at 797 (explaining that the parallelism inquiry is "an initial step prior to application of the *Colorado River* factors"); *Parada v. Sandhill Shores Prop. Owners Ass'n, Inc.*, 604 F. Supp. 3d 567, 582 (S.D. Tex. 2022) ("Accordingly, the court concludes that the state and federal proceedings are not 'parallel actions,' declines to abstain, and therefore need not consider the Colorado River factors.")

[85] R. Doc. No. 22.

National argues that, if St. Tammany prevails on its motion to dismiss, plaintiffs' claims against Safety National must also be dismissed or stayed because the Louisiana Direct Action Statute merely creates a procedural right of action against an insurer where a plaintiff has a substantive cause of action against the insured.[86] Additionally, Safety National contends that plaintiffs' claims against it should also be dismissed because the amended complaint fails to allege facts suggesting that all criteria of the Louisiana Direct Action Statute have been satisfied and because the amended complaint fails to articulate the basis for the claims against Safety National.[87]

Plaintiffs respond that the Court should deny Safety National's motion to dismiss because it should also deny St. Tammany's motion to dismiss.[88] Additionally, plaintiffs argue that their claims against Safety National do satisfy Louisiana's Direct Action Statute.[89] Alternatively, plaintiffs request leave to amend.[90]

In reply, Safety National first highlights plaintiffs' concession that BCP's claims are moot and argues that the Court should dismiss those claims.[91] Next, Safety National reiterates its argument that, to the extent the Court grants St. Tammany's motion to dismiss, it should also grant Safety National's motion to dismiss.[92] Safety National also contends that plaintiffs' amended complaint is insufficiently specific to

---

[86] R. Doc. No. 22-1, at 4–5.
[87] *Id.* at 5–7.
[88] R. Doc. No. 26, at 3.
[89] *Id.* at 3–7.
[90] *Id.* at 7.
[91] R. Doc. No. 28, at 2.
[92] *Id.* at 2–3.

put Safety National on notice of the claims being asserted against it.[93] Finally, Safety National argues that the Direct Action Statute does not permit Military Road's claims against Safety National.[94]

### i. Rule 12(b)(6) Standard of Law

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is

---

[93] *Id.* at 3–5.
[94] *Id.* at 5–7.

insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). It "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

### ii. Dismissal or Stay Based on St. Tammany's Motion

As noted, Safety National first argues that Louisiana's Direct Action Statute "does not create an independent cause of action against an insurer, but merely creates a 'procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.'"[95] Military Road does not appear to contest that, to the extent any claims are dismissed with respect to St. Tammany, they must also be dismissed with respect to Military Road pursuant to the Direct Action Statute.[96]

As the Court previously explained, it will grant in part and deny in part St. Tammany's motion to dismiss. Specifically, it will grant the motion to dismiss BCP's claims against St. Tammany because those claims are moot. It will also grant the

---

[95] R. Doc. No. 22-1, at 4 (quoting *OXY USA Inc. v. Quintana Prod. Co.*, 79 So. 3d 366, 377 (La. App. 1st Cir. 2011)).

[96] *See* R. Doc. No. 26, at 3 (arguing that the Court should deny Safety National's motion to dismiss "[f]or the reasons argued by [Military Road] in opposition to [St. Tammany's] [m]otion to [d]ismiss or, [a]lternatively, to [s]tay [c]ase").

motion to dismiss Military Road's procedural due process claims as unripe. However, it will deny the motion to dismiss Military Road's other claims against St. Tammany and deny St. Tammany's motion to stay. Accordingly, the Court will also dismiss BCP's claims against Safety National and Military Road's procedural due process claim against Safety National.

### iii. Direct Action Statute

Safety National also contends that the claims against it do not satisfy Louisiana's Direct Action Statute because that statute only applies to lawsuits brought by tort victims.[97] Pursuant to the Direct Action Statute, an "injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy[.]" La. R.S. 22:1269(B)(1). In Subsection A, the statute provides that "[n]o policy or contract of liability insurance shall be delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy[.]" La. R.S. 22:1269(A). Additionally, "an action may [ ] be maintained within the terms and limits of the policy by the injured person, or his survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer." *Id.*

Safety National asserts that "[t]he Louisiana Supreme Court has held that the only 'injured persons' with standing to bring a direct action against an insurer under

---

[97] R. Doc. No. 22-1, at 5–6.

the Direct Action Statute are those persons who are the victims of tortious conduct."[98] Indeed, in *Arrow Trucking* and other cases, Louisiana courts have suggested that the Direct Action Statute applies to tort victims rather than insureds with contract claims against a defendant. *See, e.g., Arrow Trucking*, at 465 So. 2d at 700 (holding that a reinsurer could not be sued pursuant to Louisiana's Direct Action Statute because the reinsurance policy insured against an insurer's policy loss rather than against a liability, and explaining that the statute's reference to "the injured person" refers to a tort victim, and not to an insurer suffering a policy loss); *Green v. Auto Club Grp. Ins.*, 24 So. 3d 182, 184 (La. 2009) ("The Direct Action Statute was enacted to give special rights to tort victims, not to insureds with contract claims against a defendant . . . In the absence of a Direct Action Statute, a plaintiff would have no right of action against an alleged tortfeasor's liability insurer because the obligation between the plaintiff and the alleged tortfeasor is delictual in nature, and plaintiff has no contractual relationship with the tortfeasor's insurer.") (cleaned up).

Military Road's FHA claims against Safety National sound in tort, not in contract. Courts and other authorities have explained that FHA actions are essentially actions in tort because the FHA "merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach." *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979) (quoting *Curtis v. Loether*, 415 U.S. 189, 195 (1974)); *see also Meyer v. Holley*,

---

[98] R. Doc. No. 22-1, at 5 (citing *Arrow Trucking Co. v. Cont'l Ins. Co.*, 465 So. 2d 691 (La. 1985)).

537 U.S. 280, 285 (2003) (noting that "an action brought for compensation by a victim of housing discrimination pursuant to the FHA is, in effect, a tort action"); Tracey Bateman et al., *Actual Damages in Fair Housing Proceedings by Private Individuals*, 6 Federal Procedure Lawyers Edition § 11:576 (March 2024 Update) ("A damages action under the Fair Housing Act (FHA) is, in effect, a tort action."). Safety National's argument that the Court should dismiss Military Road's claims against it pursuant to the Direct Action Statute because none of Military Road's claims sound in tort is unavailing. The Court will therefore deny Safety National's motion in this respect.[99]

### iv. Notice Pleading and Leave to Amend

Safety National also asserts that "[p]laintiffs cannot make mere conclusory allegations as to their claims against Safety National by making oblique references to the basis for their claim for damages" and that the complaint "fails to state the factual matter to support evidence that all of the criteria of the Louisiana Direct Action Statute have been satisfied."[100] In reply, Safety National suggests that Military Road must identify with specificity the nature of and basis for claiming monetary damages with respect to each count to permit Safety National an opportunity to evaluate and prepare a defense as to each count.[101]

---

[99] The Court notes that it has supplemental jurisdiction over the Direct Action Statute claim. *See City of New Orleans v. Kernan*, 933 F. Supp. 565, 569 (E.D. La. 1996) (Fallon, J.) (denying insurer's motion to dismiss because the court had supplemental jurisdiction over the plaintiff's Direct Action Statute claim since it arose out of the same case or controversy as other claims before the court).

[100] R. Doc. No. 22-1, at 6–7.

[101] R. Doc. No. 28, at 3–5.

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019) (quotations omitted). A decision to grant leave to amend is within the discretion of the trial court. *Mayfield*, 773 F. App'x at 790.

Based on this standard, the Court in its discretion will grant Military Road leave to amend its complaint to address the purported deficiencies specifically identified by Safety National's reply brief and to update its allegations in light of recent developments with respect to the sale of the property and the vacatur of the moratorium.

### III.   CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that St. Tammany's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that BCP's claims against both defendants are **DISMISSED WITHOUT PREJUDICE** as moot. The motion is also **GRANTED** in that Military Road's due process claim against both defendants is **DISMISSED WITHOUT PREJUDICE** as unripe. The motion is **DENIED** to the extent it seeks dismissal of Military Road's other claims pursuant to ripeness doctrine. The motion is also **DENIED** to the extent it seeks a stay pursuant to *Colorado River*.

**IT IS FURTHER ORDERED** that Safety National's motion to dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Military Road may file an amended complaint into the record no later than **Monday, JUNE 10, 2024**. Such amended complaint shall remove any reference to claims brought by BCP, shall include updated factual allegations in light of the vacatur of the moratorium, and shall address the alleged deficiencies identified in Safety National's reply brief.

New Orleans, Louisiana, May 31, 2024.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**