## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MILITARY ROAD REVITALIZATION**                    CIVIL ACTION
**COMPANY, LLC ET AL.**

**VERSUS**                                                              No. 24-55

**ST. TAMMANY PARISH GOVERNMENT, ET AL.**          SECTION I

## ORDER & REASONS

Before the Court is defendant Safety National Casualty Corporation's ("Safety National") motion[1] to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant St. Tammany Parish Government ("St. Tammany"), as the alleged insured of Safety National, opposes the motion.[2] Plaintiff Military Road Revitalization Company, LLC ("Military Road") likewise opposes the motion.[3] Safety National filed a reply.[4] For the reasons that follow, the Court grants in part and denies in part Safety National's motion to dismiss.

## I.      BACKGROUND

In its second amended complaint, Military Road alleges that "St. Tammany Parish has a significant need for affordable housing" partially caused by "being predominately zoned for single-family housing."[5] It states that the cost burden of housing is the most common housing problem in St. Tammany Parish, which

---

[1] R. Doc. No. 33.
[2] R. Doc. No. 36.
[3] R. Doc. No. 37.
[4] R. Doc. No. 42.
[5] R. Doc. No. 30, ¶¶ 14, 16.

1

disproportionately affects "Black, American Indian, and Alaskan households . . . in the low- to moderate-income level groups."[6] And "[l]ow-income residents have limited affordable housing options."[7] The City of Covington, Military Road contends, is no exception to these problems and it is "experiencing a shortage of rental housing units at all income levels, but especially for the area's low-to-moderate income households [which] are increasingly cost burdened."[8]

Despite recognizing the need for affordable housing and despite St. Tammany's demographics, St. Tammany allegedly "prevented the construction of an affordable, multifamily housing development in Covington."[9] Specifically, Military Road states that it planned to develop a project known as the "Covington Trace Ridge Apartments" ("the project") on a 5.328 acre lot located at 72147 Military Road in Covington, Louisiana ("the property").[10] The property was zoned as HC-2 Highway Commercial, on which a permitted use is "Lodging, 100 rooms or less (including apartments, hotels, motels)."[11] Military Road states that the project would have been a 100-unit, mixed-income community because 51% of the units target households with income levels of 80% or less of the area's median income and households with at least one member with a disability.[12] In so doing, Military Road contends that the project "would have provided high quality housing to individuals who work in Covington but

---

[6] *Id.* ¶ 20.
[7] *Id.* ¶ 25.
[8] *Id.* ¶ 34.
[9] *Id.* ¶ 36.
[10] *Id.* ¶ 37.
[11] *Id.* ¶¶ 38, 42.
[12] *Id.* ¶ 46.

are not able to find housing in Covington, the majority of whom are protected classes, including African Americans and Hispanics."[13]

Military Road asserts that, on May 4, 2023, the St. Tammany Parish Council (the "Parish Council") introduced "an ordinance imposing a moratorium on rezoning and/or permitting for the construction of multifamily buildings" in certain parts of the parish.[14] This May 4, 2023 ordinance did not apply to property zoned as "Highway Commercial or HC."[15]

On May 9, 2023, Military Road presented the project to several government officials.[16] During this meeting, Councilman David R. Fitzgerald allegedly asked about the type of residents who would live in the apartments and "stated that his constituents would 'hate' the [p]roject and be very upset with him if it got built."[17] Military Road contends that Fitzgerald's concern was "that apartments that served lower income people were being built in his district."[18]

Military Road further asserts that, following the May 9, 2023 meeting, the Parish Counsel prepared a resolution to "'investigate' the Parish President for allowing the Project."[19] This investigation was allegedly used as a political device to

---

[13] *Id.* ¶ 51.
[14] *Id.* ¶ 57.
[15] *Id.* ¶ 58.
[16] *Id.* ¶ 59.
[17] *Id.* ¶ 61.
[18] *Id.*
[19] *Id.* ¶ 63.

"attack the Parish President" and to encourage community outrage over an apartment complex that would serve low- and moderate-income residents.[20]

At the Parish Council's May 18, 2023 meeting, the Parish Council introduced an amended version of the moratorium ordinance, which applied to "Highway Commercial Zoning Classifications with Lodging (including apartments, hotels, and motels)."[21] Military Road alleges that the moratorium ordinance "was clearly targeted and retaliatory, specifically aimed to stop the [p]roject, and in particular, to keep out workforce or low-to-moderate income residents, who are mostly African American[s] and Hispanics, in the affluent neighborhood adjacent to the [p]roperty."[22]

At its June 1, 2023 meeting, the Parish Council adopted the moratorium ordinance and the investigation resolution.[23] The purpose of the moratorium ordinance was purportedly to address concerns that population growth has outpaced improvements to traffic and drainage infrastructure.[24] Military Road alleges that this reasoning was "pretextual."[25]

On December 7, 2023, Military Road states that the Parish Council extended the moratorium ordinance for an additional six months.[26] Because of the moratorium ordinance, Military Road asserts that it could not seek or obtain necessary permits

---

[20] *Id.* ¶ 64.

[21] *Id.* ¶ 66.

[22] *Id.* ¶ 68.

[23] *Id.* ¶¶ 81–82.

[24] *Id.* ¶ 83.

[25] *Id.*

[26] *Id.* ¶ 92.

or start work on the project.[27] With the project blocked, Military Road "assigned its rights to purchase the property to a third party."[28] Military Road alleges that on April 24, 2024, after learning that there would be a closing for the sale of the property to a third party, "St. Tammany decided to vacate, in part, its Moratorium Ordinance" because "the only purpose of the moratorium was to prevent Military Road's Project."[29]

The second amended complaint argues that "St. Tammany's actions in blocking the development of the Project has a disparate impact on protected classes, including African Americans, Hispanics, and persons with disabilities, in St. Tammany."[30] Additionally, Military Road claims that St. Tammany endorsed discriminatory sentiments espoused by opponents of the project with "the intent and effect of retaliating against [Military Road] for proposing an affordable housing complex in Covington and [of] chilling [Military Road] and others from proposing similar developments in the future."[31] Military Road further asserts that St. Tammany's actions had "the purpose and effect of limiting housing opportunities for protected classes" as well as "perpetuating racial segregation" by preventing protected classes from moving into the area.[32]

---

[27] *Id.* ¶ 116.
[28] *Id.* ¶ 124.
[29] *Id.* ¶¶ 129–30.
[30] *Id.* ¶ 114.
[31] *Id.* ¶ 115.
[32] *Id.* ¶¶ 118–19.

Military Road's second amended complaint includes five claims. First, the complaint alleges that St. Tammany's moratorium ordinance and "repeated refusal to fully permit the development and construction of the project" violated the Fair Housing Act (the "FHA") and its implementing regulations.[33] Military Road makes both a disparate-treatment claim[34] and a disparate-impact claim.[35] Second, Military Road alleges that St. Tammany violated its rights under the Louisiana Equal Housing Opportunity Act,[36] which makes it unlawful to "make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, national origin, or natural, protective, or cultural hairstyle." La. Rev. Stat. 51:2606(A)(1). Third, the second amended complaint alleges that St. Tammany violated the Americans with Disabilities Act (the "ADA")[37] and the Rehabilitation Act.[38] Fourth, Military Road alleges that St. Tammany violated its rights under Title VI of the Civil

---

[33] *Id.* ¶¶ 161–68. Specifically, Count 1 asserts that St. Tammany violated 42 U.S.C. § 3604(a), which makes it unlawful to "make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin" and 42 U.S.C. § 3617, which makes it unlawful to "interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of[] any right granted or protected by [various sections] of this title."

[34] *Id.* ¶¶ 169–73.

[35] *Id.* ¶¶ 174–77.

[36] *Id.* ¶¶ 208–216.

[37] Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[38] R. Doc. No. 30 ¶¶ 221–30. The Rehabilitation, Comprehensive Services, and Developmental Disabilities Act states that qualified individuals with a disability shall not "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

Rights Act of 1964.[39] Fifth, Military Road asserts a claim against Safety National under Louisiana's Direct Action Statute.[40]

Military Road seeks a judgment against Safety National holding it liable for "all amounts St. Tammany owes Military Road for any damages, fees, and costs suffered by Military Road" and a judgment declaring Safety National and St. Tammany "jointly, severally, and/or solidarily liable" for said damages, fees, and costs.[41] Military Road requests compensatory damages, punitive damages, attorney's fees, and costs.[42]

Safety National filed the instant motion[43] to dismiss on June 24, 2024, arguing that it is not liable for any award against St. Tammany. Safety National points to St. Tammany's insurance policy ("the policy"), which contains a provision ("the exclusionary provision") excluding coverage for "[a]ny liability, claim, or suit arising out of . . . [t]he intentional, willful or reckless violation of federal, state or local statute, ordinance, rule, or regulation committed by or with the knowledge or consent of an Insured."[44] Arguing that each of Military Road's claims incorporate an

---

[39] R. Doc. No. 30 ¶¶ 240–43. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[40] R. Doc. No. 30 ¶¶ 250–55. Louisiana's Direct Action Statute provides injured persons "a right of direct action against the insurer within the terms and limits of the policy." 22 La. Rev. Stat. § 1269(B)(1).

[41] R. Doc. No. 30, at 64.

[42] *Id.* at 64–66.

[43] R. Doc. No. 33.

[44] R. Doc. No. 33-1, at 3 (Safety National's motion to dismiss); R. Doc. No. 10-1, at 26 (the insurance policy).

allegation of intent and require a showing of intent to succeed, Safety National asserts that coverage is thereby precluded.[45]

St. Tammany's response in opposition argues that alleging intentional discrimination does not necessarily amount to an intentional violation of the law.[46] Furthermore, St. Tammany points out that if this Court were to hold that Safety National is not liable for any damage award, it would amount to a holding that Safety National was under no duty to defend St. Tammany in this lawsuit.[47] Such a holding would be improper, St. Tammany argues, because the facts are still in dispute and the duty to defend is generally broader than its liability for damage claims.[48] Finally, St. Tammany argues that a dismissal with prejudice is premature because no deadline for amending the pleadings had been set at the time and it is improper to determine the extent of coverage until there is a final determination of liability.[49]

Military Road's response in opposition similarly argues that the policy does not exclude coverage for intentional discrimination because the policy only excludes coverage for "acts that the insured expects will result in a violation of law."[50] In the alternative, Military Road contends that the policy is ambiguous and should be construed in favor of coverage.[51] Military Road also argues that its claims for punitive damages are covered by the policy because Safety National has not met its burden of

---

[45] R. Doc. No. 33-1, at 15.
[46] R. Doc. No. 36, at 4.
[47] *Id.* at 8.
[48] *Id.*
[49] *Id.* at 10–11.
[50] R. Doc. No. 37 at 11.
[51] *Id.* at 12–13.

showing that proving punitive damages requires proving an intentional, willful, or reckless violation of the law or that the acts were done with the knowledge of the insured.[52]   Significantly, Military Road argues that, even if the Court were to hold that claims of intentional discrimination are not covered by the policy, its disparate-impact claim pursuant to the FHA does not require a showing of intent and is therefore covered.[53] Lastly, Military Road argues that dismissal with prejudice is inappropriate and that it should at a minimum be permitted to file another amended complaint to cure any deficiencies.[54]

## II.   STANDARDS OF LAW
### a.   Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (quoting *Ashcroft*, 556 U.S. at 678).

---

[52] *Id.* at 12.
[53] *Id.* at 7.
[54] *Id.* at 16.

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). "A complaint is insufficient if it contains 'only labels and conclusions, or a formulaic recitation of the elements of a cause of action.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). It "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### b.   Insurance Contract Interpretation

Pursuant to Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of

contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). Accordingly, Louisiana contracts are interpreted to determine the "common intent of the parties. La. C.C. 2045. Unless a contract contains words of art or technical terms, "[t]he words of a contract must be given their generally prevailing meaning." La. C.C. 2047. "An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994).

While the insured bears the initial burden of demonstrating that its claim falls within the terms of its policy, "the insurer bears the burden of proving the applicability of an exclusionary clause within [the] policy." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000). "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. C.C. 2056. Thus, "ambiguities within an exclusionary provision or the policy as a whole must be construed against the insurer and in favor of coverage." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 517 (5th Cir. 2005) (citing La. C.C. 2056). Whether the terms of a contract are clear or ambiguous is a question of law. *La. Ins. Guar. Ass'n*, 630 So. 2d at 764.

### c.    Duty to Defend

Pursuant to Louisiana law, "[a]n insurer's duty to defend the insured is generally broader than the duty to indemnify." *Hardy v. Hartford Ins. Co.*, 236 F.3d

287, 290 (5th Cir. 2001) (citing *Yount v. Maisano*, 627 So. 2d 148, 153 (La. 1993)). To decide whether an insurer has the duty to defend a civil action against its insured, courts apply the "eight-corners rule," pursuant to which "an insurer must look to the 'four corners' of the plaintiff's petition and the 'four corners' of its policy to determine whether it owes that duty." *Henly v. Phillips Abita Lumber Co.*, 971 So. 2d 1104, 1109 (La. Ct. App. 2007). Extraneous evidence should not be considered. *Selective Ins. Co. of Se. v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1078 (5th Cir. 1992). Courts "look only to the *factual* allegations in the complaint," provided that "statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend." *Coleman,* 418 F.3d at 523 (emphasis in original) (quoting *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir. 1988)).

"[A]n insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." *Alwell v. Meadowcrest Hosp., Inc.*, 971 So. 2d 411, 414 (La. Ct. App. 2007). "If any facts alleged in the petition support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." *United Fire & Cas. Co. v. Hixson Bros.,* 453 F.3d 283, 285 (5th Cir. 2006). Even one allegation that is not unambiguously excluded from coverage triggers "a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside of the policy's coverage." *Coleman*, 418 F.3d at 523 (quoting *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co.*, 730 F.2d 377, 382 (5th Cir. 1984)). The petition should be interpreted liberally when making such a determination. *United Fire & Cas. Co.*, 453 F.3d at 285.

## III.   ANALYSIS

St. Tammany and Military Road argue that it is improper to decide coverage before the facts or liability have been determined.[55] This argument is without merit. The meaning of an insurance contract is a question of law, not of fact. *Martco Ltd. Partn. v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009) (citing *Bonin v. Westport Ins. Co.*, 930 So. 2d 906, 910 (La. 2006)). And courts regularly decide issues of insurance coverage upon a 12(b)(6) motion to dismiss. *See, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 835 (E.D. La. 2010) (Fallon, J.) ("[C]ourts in this circuit routinely consider policy exclusions in resolving motions to dismiss."); *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 348–49, 352–53 (5th Cir. 2007) (affirming the district court's conclusion on a 12(b)(6) motion that a water damage exclusion in the plaintiff's policy excluded coverage for losses attributable to a storm). Accordingly, the Court finds that it is proper to address Safety National's arguments that the exclusionary provision precludes coverage. Because Military Road attached a copy of the policy to its first amended complaint,[56] and because it is referenced in the second amended complaint and central to the claims against Safety National,[57] the Court considers the policy along with the second amended complaint in making its determination.

---

[55] R. Doc. No. 36, at 11; R. Doc. No. 37, at 16.
[56] *See* R. Doc. No. 10-1.
[57] *See* R. Doc. No. 30, ¶¶ 136–59.

### a.    Intentional-Discrimination Claims

Military Road's claims against St. Tammany for violating the FHA pursuant to a disparate-treatment theory, violating the Louisiana Equal Housing Opportunity Act, violating the ADA and the Rehabilitation Act, and violating Title VI all require a showing of intent. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019) (analyzing an FHA disparate-treatment claim and stating that "[w]ith discriminatory treatment claims, there can be no liability without a finding that the protected trait (e.g., race) motivated the challenged action"); *Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 648 n.90 (E.D. La. 2019) (Vance, J.) ("Because the language in the relevant sections of the FHA and Louisiana Equal Housing Opportunity Act are nearly identical, the Court's analysis of plaintiff's FHA claims applies with equal force to its claims under the state statute."); *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination."); *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[Title VI] prohibits only intentional discrimination."). Safety National therefore states that, because Military Road must prove intent to prevail on its claims, the claims necessarily allege intentional violations of the law and are excluded from coverage.[58]

The Court first addresses Military Road's argument that the policy is ambiguous, and it then looks to arguments interpreting the language of the policy.

---

[58] R. Doc. No. 33-1, at 3–4.

Military Road argues that the policy is, at minimum, ambiguous as to whether it covers intentional discrimination claims and that the Court must therefore construe the policy in favor of coverage.[59] In support of this argument, Military Road points to *Manis v. St. Paul Fire & Marine Ins.*, No. CIV. A. 01-599, 2001 WL 1397318, at *1 (E.D. La. Nov. 8, 2001) (Berrigan, J.).[60] In that case, the court noted that where one provision in a contract expressly covered a claim for the conduct alleged and another provision excluded coverage for that conduct, it was impossible for the court to know which provision trumped the other. *Manis*, 2001 WL 1397318, at *4. The court therefore read the ambiguity in favor of coverage. *Id.*

Military Road argues that the contract before this Court has similar ambiguities.[61] Specifically, Military Road states that the policy covers wrongful acts, which are not limited to negligent or unintentional acts, and includes wrongful employment practices within the definition of wrongful acts.[62] Wrongful employment practice is then defined in the policy as expressly including "discrimination or violations of an individual's civil rights."[63] From this, Military Road contends that, like *Manis*, the Court must read conflicting provisions—one expressly including coverage for discrimination and civil rights claims and one excluding intentional violations of the law—in favor of coverage.[64]

---

[59] R. Doc. No. 37, at 2.
[60] *Id.* at 13.
[61] *Id.* at 14–15.
[62] *Id.* at 14.
[63] *Id.* at 15.
[64] R. Doc. No. 37, at 15.

The Court is unpersuaded. There is no direct conflict between the wrongful acts covered by the policy and the exclusionary provision when applied to the facts alleged in the complaint. Wrongful employment practices covered by the policy, including "discrimination or violations of an individual's civil rights," are expressly limited to "employment-related act[s], omission[s], polic[ies] or practice[s]."[65] Because the second amended complaint alleges no claims of discrimination in employment, there is no conflict between the provision covering wrongful acts and the provision excluding coverage for intentional violations of the law. The Court need not conclude that the policy is ambiguous on this basis.

Turning to arguments regarding the meaning of the exclusionary provision, St. Tammany and Military Road argue that a showing of intentional discrimination, as required pursuant to its intentional-discrimination claims, is not equivalent to an intentional violation of the law that is excluded from coverage.[66] In particular, Military Road contends that the policy only excludes coverage for "intentional, willful, or reckless acts that the insured expects will result in a violation of law."[67]

St. Tammany and Military Road, in support of their argument that intentional discrimination does not always amount to an intentional violation of the law, point to *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999).[68] *Kolstad*, addressing the availability of punitive damages, states that "[t]here will be circumstances where

---

[65] R. Doc. No. 33-2, at 34.
[66] R. Doc. No. 36, at 4; R. Doc. No. 37, at 2.
[67] R. Doc. No. 37, at 2.
[68] R. Doc. No. 36, at 4–5; R. Doc. No. 37, at 2.

intentional discrimination does not give rise to punitive damages liability," such as when the employer is "unaware of the relevant federal prohibition," the employer believes that "its discrimination is lawful," the employer "reasonably believes that its discrimination satisfies a . . . statutory exception to liability," or where the "theory of discrimination [is] novel or otherwise poorly recognized." 527 U.S. at 536–37. *Kolstad*, therefore, distinguishes "malice or reckless indifference" to federally protected rights, as required for an award of punitive damages, from the "intentional discrimination" required to find liability. *See id.* at 534. However, it does not stand for the proposition that a violation of the law must meet the standard of malice or reckless indifference to be deemed an intentional violation.

Military Road's citation[69] to *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) is likewise unsupportive. In that case, the Supreme Court interpreted the bona fide error exception in the Fair Debt Collection Practices Act—excusing liability for unintentional violations of the law—and concluded that errors of law were not unintentional violations of the law. *Jerman*, 559 U.S. at 581. Indeed, the court there noted that it is a "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally" and that lack of knowledge that one's conduct violated the law does not make the violation unintentional. *Id.* at 581–83 (quoting *Barlow v. United States*, 32 U.S. 404, 411 (1833)). Far from being supportive, *Jerman* stands for the proposition that intentional

---

[69] *See* R. Doc. No. 37, at 10.

acts that violate the law may be intentional violations of the law, regardless of whether the actor was subjectively aware of their wrongful nature.

Safety National, in support of its argument that Military Road's claims are excluded from coverage, references insurance cases interpreting various exclusionary provisions. These include cases interpreting provisions excluding coverage for intentional acts[70] and willful and malicious acts.[71] Because these exclusionary provisions limit coverage for intentional, willful, or malicious acts rather than intentional violations of the law, these cases are of limited value in resolving the parties' arguments.

Most similarly, Safety National cites *Bayou Fleet, Inc. v. Alexander*, No. CIV. A. 97-2205, 1998 WL 623909, at *2 (E.D. La. Sept. 11, 1998) (Mentz, J.), [72] which

---

[70] R. Doc. No. 33-1, at 8 n.33 and accompanying text (citing *Canterberry v. Chamblee*, 953 So. 2d 900, 904 (La. Ct. App. 2007), which interpreted an "intentional acts" exclusion that excluded both expected and unexpected results from those acts, for the proposition that "intentional" applies to both expected and unexpected results of actions); *id.* at 8 n.34 and accompanying text (citing *Keathley v. State Farm Fire and Cas. Ins. Co.*, 594 So. 2d 963, 965–66 (La. Ct. App. 1992), which applied a "willful and malicious acts" exclusion to conduct where the defendant did not intend the severity of injuries because he acted "with indifference to the consequences with knowledge that some type of harm would follow"); R. Doc. No. 42, at 3 (citing *Lamkin v. Brooks*, 498 So. 2d 1068, 1071–72 (La. 1986), which interpreted a provision excluding coverage for "damages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured, or claims or injury arising out of the willful, intentional or malicious conduct of any Insured" and concluded that an officer's attack on the plaintiff was excluded from coverage because it was willful and intentional conduct).

[71] R. Doc. No. 42, at 3 (citing *Allen v. Thomson Newspapers, Inc.*, 893 So. 2d 227, at *7–8 (La. Ct. App. 2005), which read a provision excluding coverage for willful and malicious acts to exclude coverage and a duty to defend a claim arising out of a per se defamatory statement because malice is presumed).

[72] R. Doc. No. 33-1, at 8.

analyzed a provision in a public officials and employees liability policy. The provision excluded coverage for claims "based upon, arising out of or incidental to . . . a violation of [law] when such violation is committed by, or with the knowledge of an insured." *Id.* In that case, the court held that the provision clearly and unambiguously excluded coverage for an alleged conspiracy to shut down a business in violation of state and federal law, noting that "the essence of the complaint" was that the conspiracy was a deliberate attempt to shut the business down "in violation of various state and federal laws." *Id.* However, the policy in *Bayou Fleet* did not specifically exclude coverage for *intentional* violations of the law and is likewise of limited value to resolving the parties' arguments.

On its own analysis, the Court notes that subjective knowledge of the law is often irrelevant when determining whether a violation of law is intentional. *See, e.g.*, *Castillo v. Givens*, 704 F.2d 181, 198 (5th Cir. 1983) ("The standard for an intentional violation has also been referred to as 'the common civil standard which holds a person liable for the natural consequences of his or her acts.'" (quoting *DeLeon v. Ramirez*, 465 F. Supp. 698, 705 (S.D.N.Y.1979))); *Jerman*, 559 U.S. at 582–83 ("Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."). And a search for cases interpreting similar exclusionary provisions in other states reveals that other courts have not looked to subjective knowledge when determining whether a violation of the law is intentional. *See, e.g.*, *Clarendon Nat. Ins. v. City of York*, 290 F. Supp. 2d 500, 505–07 (M.D. Pa. 2003) (interpreting a policy

disclaiming liability for claims arising from "the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured" and concluding that it was clear that the claims for various civil rights claims alleged intentional violations of the law and fell squarely within the exclusion); *Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2008 WL 755082, at *6, *10 (S.D. Ohio Mar. 20, 2008) (interpreting an insurance policy that excluded liability related to claims for any "willful or intentional violation of any federal or state statute, regulations, rule, decree or similar law or act" and concluding that a claim for a violation of the Ohio Consumer Sale Practices Act was not excluded from coverage because the act does not require a showing of intent).

The Court concludes that the exclusionary provision is clear as applied to this case. The most natural reading of "intentional" in the exclusionary provision does not require a showing that St. Tammany had subjective knowledge that its alleged acts violated the law. The Court therefore holds that Military Road's claims against St. Tammany for violations of state and federal law, where those claims require a showing of intentional discrimination to prevail, are intentional violations of law and are excluded from coverage pursuant to the policy.

### b.    Disparate-Impact Claim

Military Road argues that, even if many of its claims are excluded from coverage as intentional violations of the law, its disparate-impact claim pursuant to the FHA does not require a showing of intent and it is therefore covered by the

policy.[73] Indeed, disparate-impact claims are cognizable under the FHA and do not require a showing of intent. *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524, 545–46 (2015).

Safety National argues that discriminatory-impact claims still require some evidence of intent, pursuant to a four-factor test that has been used in the Eastern District of Louisiana to assess disparate-impact claims.[74] However, since those cases, the Fifth Circuit has adopted a different burden-shifting approach from a Housing and Urban Development regulation. *See Inclusive Cmtys. Project, Inc. v. Tex. Dept. of Hous. and Cmty. Affs.*, 747 F.3d 275, 282 (5th Cir. 2014) ("We now adopt the burden-shifting approach found in 24 C.F.R. § 100.500 for claims of disparate impact under the FHA."), *aff'd and remanded*, 576 U.S. 519 (2015).

Pursuant to the burden-shifting approach, "the charging party . . . has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." 24 C.F.R. § 100.500(c). After this burden has been satisfied, the burden shifts, and "the respondent or defendant has the burden of proving that

---

[73] R. Doc. No. 37, at 2.

[74] R. Doc. No. 33-1, at 10. This test, borrowed from the Seventh Circuit, asks courts to consider (1) the strength of the "plaintiff's showing of discriminatory effect;" (2) whether there is "some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*;" (3) "the defendant's interest in taking the action complained of;" and (4) whether the plaintiff intends "to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing." *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 577 (E.D. La. 2009) (Berrigan, J.) (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977).

the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant." *Id.* Finally, if the respondent or defendant satisfies this burden of proof, "the charging party or plaintiff may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect." *Id.* Using this approach, "[l]iability may be established under the Fair Housing Act . . . even if the practice was not motivated by a discriminatory intent." 4 C.F.R. § 100.500.

Safety National also argues that even if it is possible to succeed on a disparate-impact claim pursuant to the FHA without a showing of intent, Military Road nonetheless alleges that all acts were done intentionally.[75] Because courts look at the factual allegations in the complaint to determine whether the plaintiff states a valid claim, Safety National argues that this factual allegation of intent should also preclude coverage, whether or not Military Road also alleges discriminatory effect.[76]

Pursuant to Louisiana law, "[w]hile factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify." *Martco Ltd. Partn.*, 588 F.3d at 872. A duty to defend arises whenever the pleadings "disclose a possibility of liability under the policy." *Id.* at 872–73. In contrast, a "duty to indemnify typically can be resolved only after the conclusion of the underlying action, as the insurer's duty to indemnify is based on the

---

[75] R. Doc. No. 42, at 2.
[76] *Id.*

'actual facts' brought out in the underlying action." *Gilchrist Constr. Co. v. Travelers Indem. Co.*, 416 F. Supp. 3d 619 (W.D. La. 2019), *aff'd*, 811 Fed. Appx. 262 (5th Cir. 2020).

Construing the second amended complaint liberally, the Court reads the facts in support of Military Road's disparate-treatment and disparate-impact claims separately. Reading the facts alleged in this way, Military Road's pleadings plainly disclose a possibility of liability pursuant to the policy for its FHA disparate-impact claim.

Military Road alleges that St. Tammany's actions limited "housing opportunities for protected classes, including African Americans, Hispanics, and persons with disabilities, that would have lived in the Covington Trace Ridge Apartments" and perpetuated racial segregation by preventing protected classes from moving into the area.[77] Despite allegations in the second amended complaint that St. Tammany intended to bring about discriminatory effects,[78] it is possible that the jury will accept the allegations of discriminatory impact while rejecting allegations of intent. It is therefore possible that a jury would find that St. Tammany violated the law unintentionally, which would not be excluded from coverage pursuant to the exclusionary provision. Because the question of whether Safety National is liable for this claim will depend on the facts found at trial, the Court declines to dismiss

---

[77] *Id.* ¶¶ 118–19.
[78] *See* R. Doc. No. 30, ¶¶ 115, 178, 185, 187.

Military Road's claim against Safety National for disparate impact pursuant to the FHA.

### c.    Duty to Defend

The policy also includes a provision regarding the duty to defend. Under the "Defense and Settlement" section, the policy states: "We have the right and duty to defend the Insured against any claim or suit seeking damages for an occurrence or wrongful act covered by this policy, but only when the Retained Limit has been exhausted by your payment to a third party of judgments, settlements, or defense costs."[79]

Because the Court declines to dismiss Military Road's disparate-impact claim against Safety National, the Court also concludes that Safety National has a duty to defend St. Tammany in the instant lawsuit, subject to the conditions regarding exhaustion of the retained limit. Military Road alleges facts disclosing a possibility of liability for its disparate-impact claim. And it thereby alleges facts that are not unambiguously excluded from coverage pursuant to the policy—triggering a duty to defend.

### d.    Punitive Damages

Because the Court declines to dismiss Military Road's disparate-impact claim pursuant to the FHA against Safety National, the Court also addresses arguments that Military Road's claims for punitive damages should similarly be dismissed. Safety National states that to justify an award of punitive damages under the FHA,

---

[79] R. Doc. No. 10-1, at 22.

Military Road must show that St. Tammany acted with "malice or reckless indifference that [its] actions might violate a federal statute of which [it was] aware."[80] This, Safety National argues, precludes coverage for an award of punitive damages because such an award would require a finding that St. Tammany acted intentionally, willfully, or recklessly in violating the law.[81]

Military Road argues that Safety National has not met its burden demonstrating that the request for punitive damages is excluded because Safety National has not demonstrated that the acts in the complaint were done "by or with the knowledge of the insured."[82] Nor, Military Road argues, has Safety National provided any interpretation of the meaning of that phrase.[83]

However, in its reply, Safety National also argues that the policy explicitly excludes coverage for punitive damages.[84] Indeed, the policy states that the insurance does not apply to "[a]ny claim or suit" for "[p]unitive, exemplary, or multiplied damages."[85] Because the policy clearly and explicitly excludes coverage for punitive damages,[86] the Court declines to analyze Safety National's argument that claims for

---

[80] R. Doc. No. 33-1, at 12 (alterations in original) (quoting *Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003)).

[81] R. Doc. No. 33-1, at 12

[82] R. Doc. No. 37, at 2.

[83] *Id.*

[84] R. Doc. No. 42, at 9 n.2.

[85] R. Doc. No. 33-2, at 28.

[86] *See Bertram v. Progressive S.E. Ins.*, No. 2:19-CV-01478, 2023 WL 4555799, at *2 (W.D. La. July 14, 2023) (interpreting a policy excluding coverage for "any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution, or any damages which are a multiple of, or in addition to, compensatory damages" as clearly "exclud[ing] claims for punitive or exemplary damages from coverage"); *Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 260 (5th

punitive damages are also precluded by the provision excluding coverage for "intentional, willful, or reckless" violations of law.

### e.      Leave to Amend

In the alternative, Military Road requests leave to amend its compliant to cure any defect and to potentially add additional theories of liability, "such as state law negligence claims."[87] Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." "A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). However, "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019). A decision to grant leave to amend is within the discretion of the

---

Cir. 1998) (holding that the insurer had no liability for the part of the settlement paid to settle exposure for punitive damages because the policy expressly excluded liability for "fines, penalties, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages").

[87] R. Doc. No. 37, at 16.

trial court. *Mayfield*, 773 F. App'x at 790. And a trial court may deny a request, even when it is made within the deadline set by a court for seeking leave to amend. *See Mason v. Fremont Inv. & Loan*, 671 Fed. Appx. 880, 883 (5th Cir. 2016) (differentiating the liberal Rule 15 standard for leave to amend, when a request is made before the court's deadline for requesting leave to amend, from the more stringent Rule 16 standard, requiring a showing of good cause if a request is made after the court's deadline).

Pursuant to Rule 15, a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). These reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962) "[A]n amended complaint is futile 'if the complaint as amended would be subject to dismissal.'" *Rohi v. Brewer* (*In re ABC Dentistry, P.A.*), 978 F.3d 323, 325 (5th Cir. 2020) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)). Futility is evaluated "under the same standards as a dismissal under Rule 12(b)(6)." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

The Court concludes that it would be futile to allow Military Road to amend its complaint to cure defects in its intentional-discrimination claims. Those claims are

necessarily excluded from coverage pursuant to the policy, and any amended complaint making these claims against Safety National would be subject to dismissal.

Additionally, Military Road's request for leave to add additional negligence claims does not state with sufficient particularity the grounds for the amendment and the relief sought. Courts have frequently denied leave to amend on similarly bare requests. *See, e.g.*, *Kovalchuk v. Wilmington Sav. Fund Socy.*, No. 21-40281, 2021 WL 5119705, at *2 (5th Cir. Nov. 3, 2021) (affirming the district court's denial of a request for leave to amend for being insufficiently particular when it asked to amend "any other cause of action which the Court determines should be dismissed"); *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325 (5th Cir. 2003) (affirming the district court decision to deny leave to amend for being insufficiently particular when the plaintiff asked to "file amended pleadings adding additional plaintiffs and facts as allowed by law"). Military Road has already filed three complaints in this matter, and it has not stated why negligence claims were absent from those three complaints, what negligence claims it intends to add, or the factual basis for those claims. The Court will therefore deny Military Road's request for leave to amend.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Safety National's motion to dismiss Military Road's claims against it is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** in that Military Road's claims against Safety National for violations of the Louisiana Equal Housing Opportunity Act, the ADA and Rehabilitation Act, Title

VI, and intentional discrimination pursuant to the FHA are **DISMISSED WITH PREJUDICE**. The motion is also **GRANTED** in that Military Road's claims for punitive damages against Safety National are **DISMISSED WITH PREJUDICE**. Safety National's motion is **DENIED** to the extent that it seeks to dismiss Military Road's claim against it for disparate-impact liability pursuant to the FHA.

**IT IS FURTHER ORDERED** that Military Road's request to file an amended complaint is **DENIED**.

New Orleans, Louisiana, August 14, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**